IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RAQUEL E. VÉLEZ-MOLINA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS RIVERA SCHATZ IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE SENATE OF PUERTO RICO, et al., <br><br> Defendants. | CIVIL NO.: 20-1565 (MEL) |

**OPINION & ORDER**

Pending before the court is the Senate of Puerto Rico's (the "Senate") Notice of Injunction Pursuant to the Confirmation Order Issued by the Title III Court Staying the Instant Case (the "Notice of Injunction"). ECF No. 95. For the reasons set forth below, the Notice of Injunction is NOTED, and accordingly this case is STAYED.

**I.   FACTUAL ALLEGATIONS OF THE COMPLAINT**

Mrs. Raquel Vélez-Molina worked in the office of former Puerto Rico Senator Miguel Romero Lugo from August 1, 2017, until March 31, 2019. ECF No. 20 at 3. While working, Mrs. Vélez allegedly experienced derogatory and hostile comments affecting her well-being and sense of safety from at least two of her coworkers, Luis Flores-Alomar and Rúben Villegas. ECF No. 20 at 5–7. While Mr. Villegas was eventually disciplined, Mr. Flores, Mrs. Vélez's primary aggressor, was not disciplined, even after multiple employees, including Senator Romero, were made aware of Mr. Flores's actions. ECF No. 20 at 5–10. Mrs. Vélez further alleges that, during a hostile interaction, Mr. Flores pinned his office door onto her left hand, requiring her to seek medical attention. ECF No. 20 at 11, 13. Shortly thereafter, Mrs. Vélez met with several

1

members from human resources to discuss Mr. Flores's actions. ECF No. 20 at 12. Human resources representatives told Mrs. Vélez that they could not do anything about Mr. Flores. *Id*. On December 12, 2018, Mrs. Vélez filed a formal discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), and as a result, she was assigned a new office building. ECF No. 20 at 13. However, Mrs. Vélez's new office was unfit for work because of issues regarding, among other things, mold, water leaks, and loud noises due to construction. ECF No. 20 at 14. Although the move was allegedly meant to separate Mrs. Vélez from Mr. Flores, Mr. Flores would still visit Mrs. Vélez in her new workspace and harass her. *Id*. Mrs. Vélez brought this up to others, including Senator Romero, but Mr. Flores was not disciplined. ECF No. 20 at 14–15. On March 31, 2019, the Senate terminated Mrs. Vélez's employment. ECF No. 20 at 3, 17. Mrs. Vélez alleges that her termination was retaliatory for her actions in opposing discriminatory practices in the office and for filing the EEOC complaint. ECF No. 20 at 1.

On October 21, 2020, Mrs. Vélez, her husband, and the legal conjugal partnership between them (collectively "Plaintiffs") filed suit against the Senate and Senator Romero in his official and personal capacity, alleging several claims based on hostile work environment, disparate treatment based on sex and retaliation, and dismissal based on sex discrimination and retaliation. ECF No. 1 at 15–17. On January 13, 2021, Plaintiffs filed an amended complaint. ECF No. 20. On January 26, 2021, Senator Romero in his personal capacity moved to dismiss the amended complaint. ECF No. 30. On March 8, 2021, the Senate and Senator Romero in their official capacity filed a motion to dismiss the amended complaint. ECF No. 39. On October 1, 2021, the court dismissed the case as to Senator Romero, and on February 22, 2022, the court dismissed several claims against the Senate, leaving only the following claims outstanding:

hostile work environment, retaliation, and termination under Title VII; hostile work environment under Law 69; and retaliation under Law 115. ECF Nos. 51, 52; 42 U.S.C §§ 2000e et seq.; 29 L.P.R.A §§ 1321 et seq., 194.

On April 4, 2023, the Senate filed the Notice of Injunction. ECF No. 95. Plaintiffs filed their opposition to the Senate's Notice of Injunction on April 27, 2023. ECF No. 99. The Senate replied on May 12, 2023, and Plaintiffs filed a surreply on June 23, 2023. ECF Nos. 104, 110. On August 18, 2023, the Senate filed a motion to submit a relevant ruling in which Plaintiffs did not respond. ECF No. 111.

## II. PUERTO RICO OVERSIGHT, MANAGEMENT, AND ECONOMIC STABILITY ACT

On June 30, 2016, Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") to address the Commonwealth of Puerto Rico's "fiscal emergency" created by a "combination of severe economic decline, and, at times, accumulated operating deficits, lack of financial transparency, management inefficiencies, and excessive borrowing." 48 U.S.C. § 2194(m). PROMESA established the Oversight Board "to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." 48 U.S.C. § 2121. PROMESA gives the Oversight Board broad powers to fulfill its mandate, including the authority to "certify the fiscal plans and budgets of the Commonwealth and its instrumentalities, override Commonwealth executive and legislative actions that are inconsistent with certified fiscal plans and budgets, review new legislative acts, and commence a bankruptcy-type proceeding in federal court on behalf of the Commonwealth or its instrumentalities." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 403 F. Supp. 3d 1, 5 (D.P.R. 2019) (citing 48 U.S.C. §§ 2141-2152, 2175(a)).

The Oversight Board commenced a debt adjustment proceeding on behalf of the

Commonwealth of Puerto Rico by filing a petition under Title III of PROMESA (the "Title III Case") on May 3, 2017. Dkt. No. 1 in Case No. 17-3283. On January 18, 2022, the Title III court confirmed the Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. (the "Title III Plan" or the "Plan"). Dkt. No. 19813 in Case No. 17-3283. The Plan became effective of March 15, 2022 (the "Effective Date"). Dkt. No. 20349 at 2 in Case No. 17-3283. As explained below, the Plan contains several injunctions, one of which encompasses all claims and causes of action against the Commonwealth of Puerto Rico (the "Plan Injunction") not already addressed within the Plan or the court order confirming it (the "Confirmation Order").[1] *See* Confirmation Order §§ 56, 59; Title III Plan §§ 92.2–92.3.

### III.  ANALYSIS

Plaintiffs' claims against the Senate are permanently enjoined pursuant to the Plan's Injunction. Plaintiffs contend that Section 362(a)(1), the automatic stay provision under Federal Bankruptcy Code, governs this dispute and that their claims fall outside Section 362(a)(1). Therefore, according to Plaintiffs, this case should not be stayed. However, Section 362(a)(1)'s automatic stay has expired and been replaced by the Plan Injunction, and thus this argument cannot stand.

#### A. The automatic stay has expired.

Plaintiff's primary argument opposing the Senate's Notice of Injunction is that Section 362(a)(1)'s automatic stay under the Federal Bankruptcy Code governs. Specifically, Plaintiffs assert that the automatic stay applies only to proceedings that have been or could have been brought against the Commonwealth of Puerto Rico before the Title III Case. Because Plaintiffs'

---

[1] Many of the Plan's provisions mirror the provisions within the Confirmation Order. For example, Section 92.2 of the Plan mirrors Section 56 of the Confirmation Order, and Section 92.3 of the Plan mirrors Section 56 of the Confirmation Order. *Compare* Title III Plan §§ 92.2–92.3, *with* Confirmation Order §§ 56, 59. Accordingly, these provisions may be used interchangeably for this analysis.

4

claims arose after the Title III Case, Plaintiffs argue, Section 362(a)(1)'s automatic stay provision does not enjoin their claims, and therefore this case should not be stayed. While Plaintiffs cite jurisprudence interpreting general bankruptcy principles and Section 362(a)(1), the court need not consider Plaintiffs' argument further because the Title III court has clearly established that Section 362(a)(1)'s stay ceased following the Plan's Effective Date. *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 650 B.R. 286, 293 (D.P.R. 2022) (holding that the Section 362 automatic stay was terminated after the Effective Date); Dkt. No. 24851 at 6–8 in Case No. 17-3283. ("[U]pon the . . . Effective Date . . . , the Commonwealth was granted a discharge from a broad range of claims[,] and[] under [S]ection 362(c)(2)(C) of the Bankruptcy Code, the automatic stay terminated." (citation omitted)); *see also* Title III Plan § 92.2; Confirmation Order § 56. Accordingly, the automatic stay expired upon the Effective Date and is not applicable in this case.

### B.  The Plan Injunction applies and deprives this court of jurisdiction.

The court now turns on whether the Plan's Injunction applies to Plaintiffs' claims. A plain reading of the Plan's Injunction shows that it permanently enjoins all claims discharged pursuant to Section 56 of the Confirmation Order and Section 92.2 of the Plan:

> **Injunction on Claims. Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property . . .**

Confirmation Order § 59; Title III Plan § 92.3. Additionally, Section 56 and 92.2 were drafted to broadly discharge claims against the Commonwealth:

> Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, *all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever*, including any interest accrued on such Claims from and after the Petition Date, . . . . *Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date* . . .

Confirmation Order § 56 (emphasis added); Title III Plan § 92.2. More importantly, the Title III court has interpreted these provisions to broadly apply toward claims against the Commonwealth of Puerto Rico. *In re Fin. Oversight & Mgmt. Bd.*, 650 B.R. at 290, 295 (holding that movants Section 1983 claims are permanently enjoined by the Plan Injunction); Dkt. No. 24851 at 9 in Case No. 17-3283 ("Although the automatic stay no longer precludes the assertion of Movant's claims against the Commonwealth and the PRPD, any such claims have been discharged by the Plan and cannot be pursued because they are subject to the Plan Injunction.").

Plaintiffs further argue that Section 92.2 (and 56) should be interpreted to discharge only "those claims that are reasonably related to any claim rooted to prebankruptcy past." ECF No. 99 at 6. However, Section 92.2 explicitly states that claims which arose *prior* to the Effective Date are discharged. Title III Plan § 92.2. Because Plaintiffs' claims arose between 2017 and 2019—which is before the Effective Date of March 2022—their claims are discharged per the Plan. ECF No. 20 at 3, 17; *see also id*. Moreover, because Plaintiffs provide no reason to distinguish their claims from those in the cases cited above or that an exception within the Plan is applicable, the Plan Injunction applies and enjoins Plaintiffs' claims.

6

The Senate further contends that Plaintiffs' only remedy is to file an Administrative Expense Claim according to Sections 1.51 and 1.52 of the Plan. ECF No. 95 at 8–9. Plaintiffs do not affirmatively state whether they have filed an Administrative Expense Claim and instead argue that their claim is not an Administrative Expense Claim. The court need not consider these arguments because the Plan Injunction has deprived this court of jurisdiction. Nevertheless, even if Plaintiffs did file an Administrative Expense Claim, resolution of that claim would be governed by the Title III court, not this court. Accordingly, this case is stayed pending further order from the Title III Court. *In re Fin. Oversight & Mgmt. Bd.*, 650 B.R. at 290, 296. ("Finally, the Plan provides that '[a]ll injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms'—which is to say permanently, unless modified by this Court." (citing Title III Plan § 92.25; Confirmation Order § 66)).

## IV.  CONCLUSION

For the foregoing reasons, the Senate's Notice of Injunction (ECF No. 95) is NOTED. This case is STAYED pursuant to PROMESA, 48 U.S.C. §§ 2101–2241. This case will be administratively closed for statistical purposes. However, the case may be reopened upon the filing of a copy of the order stating that the Plan Injunction was lifted in the PROMESA Title III proceedings or upon further order of the court.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of September, 2023.

s/Marcos E. López<br>
U.S. Magistrate Judge